UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SARAH SANDERS and HENRY EDWARDS, individually, | ) ) ) | |
| Claimants, | ) ) | |
| v. | ) ) ) | Case No. 3:23-cv-03406-GCS |
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY and NATIONAL FIRE & MARINE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Before the Court is Defendants National Liability & Fire Insurance Company's ("National Liability") and National Fire & Marine Insurance Company's ("National Fire") (collectively, "National") Motion for Judgment on the Pleadings. (Doc. 113). Plaintiffs, joined by the third-party Defendants in this case (collectively, "Claimants") oppose Defendants' Motion. (Doc. 132). Defendants replied to Claimants' response. (Doc. 133). For the reasons explained below, the Court **GRANTS** Defendant's Motion.

### LEGAL STANDARDS

Judgment on the pleadings is appropriate when there are no disputed issues of material fact, and it is clear the moving party is entitled to judgment as a matter of law. *See Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). In considering a

motion for judgment on the pleadings, the court is confined to matters presented in the pleadings and must view the facts in the light most favorably to the non-moving party. *Id.*; *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

**FACTUAL BACKGROUND**

This case arises from a car accident. On January 19, 2020, David Wasson crashed head-on into an oncoming Lincoln Town Car owned and operated by JS VIP Enterprises, LLC ("JS VIP"). (Doc. 30, p. 6). Sarah Sanders, Henry Edwards, Brittany Jo Allard, Joshua Evans, Demetrius Duncan, Gina Rich, Terence Kincaid, Perry Brenneman, and Kenny Webb were passengers in the Lincoln Town Car. *Id.* at p. 6-7. They suffered injuries in the crash. *Id.* Jarrett Bencie, the driver of the Town Car, and Kenny Webb, another passenger in the Town Car, sustained fatal injuries. *Id.* After the accident, the surviving crash victims, as well as the estates of Webb and Bencie, sued David Wasson's estate for damages resulting from the accident. *Id.* at p. 8. After Wasson's insurer paid out its policy limits,[1] Claimants pursued underinsured motorist claims with Defendant National Liability, who insured JS VIP. *Id.* at p. 7-8.

**The Policies**

The commercial insurance policy declarations ("Declarations") at issue here provide that "the most [National Liability] will pay for any one accident or loss" is $1,000,000. The other relevant provisions read, in part:

---

[1]    Each Claimaint received $5,000. (Doc. 30, p. 7).

SECTION II — COVERED AUTOS LIABILITY COVERAGE

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

. . .

C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Covered Autos Liability Coverage shown in the declarations.

(Doc. 113-1, p. 13, 18, 21). The Declarations also define three relevant terms:

"'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or property damage."

"'Bodily injury' means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these."

"'Loss' means direct and accidental loss or damage."

(Doc. 23-1, p. 26, 27). The policy includes an endorsement for underinsured motorist coverage ("UIM Endorsement"). The UIM Endorsement does not directly include a limit of insurance. Instead, it refers the reader back to the primary policy declaration, which imposes a $1,000,000 limit, and specifies that the limit provided in the Declarations applies to each "Accident," as that term is defined in the Declarations. (Doc. 23-1, p. 31).

In addition to commercial and UIM coverage, JS VIP also had excess insurance coverage ("Excess Policy") at the time of the accident. (Doc. 113-2, p. 17-20). The Excess Policy requires National Liability to pay damages that exceed the coverage limits of the

commercial policy. The Excess Policy excludes underinsured motorist coverage. *Id.* at p. 19.

Finally, the commercial insurance policy includes a Form MCS-90B, which provides public liability coverage pursuant to Section 18 of the Bus Regulatory Reform Act of 1982. (Doc. 113-1, p. 6). This form obligates National Liability to pay up to $5,000,000 for "any final judgment recovered against the Insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982." *Id.*

## DISCUSSION

As a threshold matter, Claimants assert that the amount of coverage provided by Defendants presents a genuine issue of material fact. (Doc. 132, p. 3). The Court disagrees. Under Illinois law, interpretation of a contract is a question of law, not one of fact. *People ex rel. Dep't of Pub. Health v. Wiley*, 843 N.E.2d 259, 268 (Ill. 2006*); LaSalle Nat. Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir. 1987). The dispute that Claimants identify does not actually concern the facts. The parties do not dispute the limits of insurance provided for in the Declarations and UIM Endorsement. What they dispute is which limit, if any, applies. In other words, the issue is the interpretation of a contract, which, as noted above, is a question of law.

Claimants rely on *LaSalle Nat. Ins. Co. v. Executive Auto Leasing Co.*, 257 N.E.2d 508, 512 (Ill. App. Ct. 1st Dist. 1970) for the proposition that an ambiguity in a contract can

create a genuine issue of material fact. (Doc. 132, p. 4). However, the contract at issue in that case created a genuine issue of material fact because it "require[d] extrinsic evidence to ascertain the intent of the parties at the time they entered into it." *LaSalle Nat. Ins. Co. v. Executive Auto Leasing Co.*, 257 N.E.2d 508, 512 (Ill. App. Ct. 1st Dist. 1970). *See also Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 456 (7th Cir. 1991) (noting that interpretation is a question of fact under Illinois law only where "the parties dispute the extrinsic evidence on an ambiguous contract."). As explained below, the contract at issue here is not ambiguous and there is no need to consider extrinsic evidence to interpret it. It follows there is no genuine dispute of material fact and that judgment on the pleadings is proper.

**The policy is not ambiguous**

The insurance policy at issue here is not ambiguous. Claimants make three arguments as to ambiguity. None of them is sufficient to show an ambiguity that might be construed against National in this case. First, Claimants argue the contract is ambiguous because Declarations refer to the Endorsement to set the limit of insurance. They are not correct. Illinois courts have concluded that there is no ambiguity where a policy uses shorthand notation and refers to a declaration to determine a limit of insurance. *See Hanson v. Lumley Trucking, LLC*, 932 N.E.2d 1179, 1183 (Ill. App. Ct. 5th Dist. 2010). *See also Prudential Property & Cas. Ins. Co. v. Kelly*, 817 N.E.2d 1226, 1229 (Ill. App. Ct. 3rd Dist. 2004) (noting no ambiguity where policy listed limit of insurance once but listed separate premiums for different vehicles). The mere fact that the contract at issue

Page 5 of 10

here refers the reader from the Declarations to the Endorsement is not sufficient to create an ambiguity.

Second, Claimants argue the policy is ambiguous because, even if it limits the total amount to be paid in relation to any one accident, it does not do so for a "loss." Claimants claim that each of them suffered a loss and are thus entitled to up to $1,000,000 in damages. (Doc. 104, p. 6). This argument turns entirely on the interpretation of the term "loss" in the insurance policy. Claimants concede that only one accident occurred and expressly disclaim any argument that they could "stack" liability limits. *See, e.g.*, (Doc. 132, p. 8) (stating that "[t]here was only one accident. . . . this simply is not a stacking issue"). Rather, Claimants claim that bodily injuries are a "loss" under the terms of the Declarations and that the Declarations and UIM Endorsement impose a $1,000,000 limit for each loss. (Doc. 104, p. 6). Accordingly, Claimants can prevail only if it is reasonable to interpret "loss" to include bodily injury in the context of the insurance policy. *See Bruder v. Country Mut. Ins. Co.*, 620 N.E.2d 355, 362 (Ill. 1993). In determining whether an interpretation is reasonable, an insurance policy must be read as a whole. *See In re Est. of Striplin*, 807 N.E.2d 1255, 1259 (Ill. App. Ct. 2nd Dist. 2004).

Claimants' interpretation is not reasonable for two reasons. The UIM Endorsement replaces the phrase "Accident or Loss" in the Declarations with "Accident." (Doc. 23-1, p. 31). The UIM Endorsement specifies that the provisions of the primary coverage continue to apply "unless modified by the endorsement." (Doc. 23-1, p. 31). The schedule in the UIM Endorsement contains two parts. Claimants focus on the first part, which

Page 6 of 10

refers back to the Declarations for the Limit of Insurance. (Doc. 23-1, p. 31). But the second part of the schedule says that the Limit of Insurance applies to "Each 'Accident.'" *Id*. This phrase modifies the term "any one accident *or loss*" in the Declarations. *Id*. at 13 (emphasis added). The Endorsement further requires that National "will pay all sums the 'insured' is legally entitled to recover. . . the damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'" *Id.* at p. 31. This language is straightforward and unambiguous: the UIM limit of insurance applies to all damages that are caused by an accident, irrespective of whether those damages are a "loss."

Moreover, when the insurance policy is read as a whole, it is clear that "loss" does not include bodily injury. The Declarations define "loss" as "direct and accidental loss or damage." (Doc. 23-1, p. 27). The use of the term throughout the Declarations and Endorsement makes clear that a loss refers to damage to a covered vehicle, not to any harm suffered by any person covered under the policy. For example, the Declarations list "Specified Causes of Loss" under the heading "Physical Damage Insurance" and provides that National will pay for a "loss" to a "covered auto" in certain circumstances, including fire, lightning, vandalism, and collisions with birds or animals. (Doc. 23-1, p. 13, 22). They also refer to "loss" as a reason that a covered automobile might be out of service. *Id.* at p. 18. Elsewhere, the Declarations exclude coverage for any "'loss' to a covered 'auto' due to 'diminution in value.'" *Id.* at p. 23. The UIM Endorsement similarly refers to "loss" as a reason that a vehicle might be out of service. *Id.* at p. 35. Interpreting "loss" to include bodily injury, as Claimants urge the Court to do, would render the above

provisions of the Declarations and UIM Endorsement meaningless. *See also Washington v. McCauley*, (La. App. 2 Cir. 2/16/11), 62 So. 3d 173 (rejecting interpretation of identical policy language to include bodily injury where "loss" was used almost exclusively to refer to property damage). Because Claimants' interpretation of the contract would lead to an absurd result, it is not reasonable.

Claimants point to one provision of the UIM Endorsement in support of their interpretation. (Doc. 132, p. 7) The UIM Endorsement provides that no insured is entitled to duplicate payments for the same "elements of loss" under the UIM endorsement and any other liability coverage. (Doc. 113-1, p. 32). This language does not create an ambiguity. It is entirely possible, if not likely, that an accident involving an underinsured motorist would cause physical damage to a covered vehicle – in other words, a "loss" as that term is used throughout the Declarations and UIM Endorsement. A provision to prohibit duplicate payments for the same loss does not support an inference that loss includes bodily harm. Rather, it shows that an accident may cause a loss, which reinforces the single, unambiguous interpretation of the UIM Endorsement outlined above.

In support of their interpretation of "loss," Claimants rely on *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238 (Ill. App. Ct. 1st Dist. 1997). In that case, the court concluded that a limit of insurance provision was ambiguous where the UIM policy said that it applied separately to each insured to whom the policy applied and that there was a single limit of liability arising out of any one loss. *Id*. at 252. Crucially, there was no question as to what constituted a loss in that case because the policy at issue in *Jones*

defined a "loss" as "an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions." *Id.* The policy at issue here does not define loss as an accident, nor does the UIM policy contain a provision that says it applies separately to each insured. Thus, the reasoning in *Jones* is not applicable.

Claimants' third argument for ambiguity is that the policy is ambiguous because it includes multiple lines of declarations and insures multiple vehicles. (Doc. 104, p. 6). This is not the case. The case that the amended complaint relies on for this proposition is *Bruder*, 620 N.E.2d 355. (Doc. 104, p. 6). But, as Defendants correctly note, the court in *Bruder* found that the insurance policy at issue there was *not* ambiguous even though it included multiple lines of declarations and vehicles. *Id.* at 362-363. The result is the same here. Because the Declarations and Endorsement are not ambiguous, Defendants are entitled to a judgment on the pleadings that the $1,000,000 limit of insurance applies to the damages arising out of the accident at issue in this case.

**The Excess Policy exclusion is Enforceable**

Claimants next argue that the Excess Policy's exclusion of UIM coverage is invalid because it violates public policy. (Doc. 132, p. 10-11). They point to cases that show that insurance provisions that violate public policy are void. *Id.* at p. 11. That may be true as a general proposition, but it does not violate public policy for the Excess Policy to exclude UIM coverage. *See, e.g.*, 215 ILL. COMP. STAT. § 5/143a-2(5) (stating that "[i]nsurers providing liability coverage on an excess or umbrella basis are *neither required to provide*, nor are they prohibited from offering or making available coverages conforming to this

Section on a supplemental basis.") (emphasis added). Illinois courts have confirmed that such an exclusion is consistent with Illinois public policy. *See, e.g., Huizenga v. Auto-Owners Ins.*, 4 N.E.3d 541, 547 (Ill. App. Ct. 3rd Dist. 2014) (stating that "[i]nsurers are permitted to issue umbrella policies that exclude uninsured motorist coverage. Limiting an umbrella policy's coverage to excess third-party liability and excluding excess uninsured motorist coverage is consistent with Illinois law and public policy."). Thus, the UIM exclusion in the Excess Policy is enforceable and Defendants are entitled to judgment on the pleadings on this issue.

**The MCS-90B Form is not relevant.**

Lastly, Claimants argue that the public liability endorsement that is a part of Defendant National's policy for JS VIP applies here. They are incorrect as a matter of law. First, an MCS-90B obligation provides only that an insurer will pay a final judgment against an insured. *See Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 327 (7th Cir. 2010). If there is no final judgment, the obligation is not triggered. *Id*. Here, there is no final judgment, so the MCS-90B Form does not apply.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings with respect to Plaintiffs' Joint Amended Complaint.

**IT IS SO ORDERED.**

**DATED: March 31, 2026.**

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2026.03.31 17:18:18 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

Page 10 of 10